OPINION
{¶ 1} Plaintiff, Richard Masters, appeals from a judgment of the court of common pleas in favor of Defendant, Marcy Mobley, awarding judgment for Defendant Mobley and against Plaintiff Masters in the amount of $21,350, plus interest, and attorney fees in the amount of $5,000. *Page 2 
 {¶ 2} On February 7, 2003, following negotiations, Masters and Mobley agreed that Masters would sell Mobley the assets of a nightclub business operating under the name "Wolfies." The agreement was in writing and consisted of two parts: a "Purchase Agreement" and a "Management Agreement."
 {¶ 3} The Purchase Agreement provides that Masters would sell the business to Mobley for $75,000, and that the price was payable in a downpayment of $15,000 and monthly payments of $2,000 until the balance is paid in full. Because one of the assets Masters agreed to sell was the liquor license for the business, the parties also agreed that Mobley would pay the costs necessary to transfer the license. The Management Agreement provides that, until the license is transferred to Mobley, she would manage and operate the business.
 {¶ 4} Masters arranged for Mobley to borrow the $15,000 downpayment, which Mobley paid Masters. Problems soon developed, and Mobley fell behind in the monthly payments she owed. When Masters subsequently revealed that the liquor license was in fact owned by a third person, Mobley paid the fee of $1,875 necessary to transfer the license from the third person to Masters. Mobley also paid $475 to repair a water valve that Masters had left unrepaired. Finally, after Mobley had paid $4,000 over three months, Masters removed the license *Page 3 
from the premises because Mobley was in arrears, requiring Mobley to close the business.
 {¶ 5} Masters commenced the underlying action on a breach of contract claim, seeking a judgment against Mobley for an additional $15,000[1]
Masters claims he is owed pursuant to their agreements. Mobley filed a counterclaim, alleging that Masters engaged in fraud by using the monies she paid him to pay liabilities of the business in order to obtain the liquor license Masters represented that he owned. Mobley likewise alleged a breach of contract, and she sought a judgment for the monies she paid Masters and for attorney fees.
 {¶ 6} The case was referred to a magistrate who, after hearing, entered a decision for Mobley on Masters' breach of contract claim and on Mobley's counterclaim. The magistrate found that the Purchase Agreement contract was "unlawful" because Masters misrepresented his ownership of the liquor license and because it failed to contain a contingency clause relieving Mobley of her obligation in the event Masters was unable to transfer the liquor license to Mobley. The *Page 4 
magistrate further found that the Management Agreement is unenforceable due to the illegality of the Purchase Agreement. The magistrate awarded Mobley a judgment of $21,350 for the money she had paid Masters and the cost of the repair of the water valve. The magistrate also awarded Mobley $5,000 as and for attorney fees.
 {¶ 7} Masters filed objections to the magistrate's decision. The trial court overruled the objections and adopted the magistrate's decision. Masters filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT ERRED IN FINDING THAT THE CONTRACT BETWEEN MASTERS AND MOBLEY WAS UNLAWFUL."
SECOND ASSIGNMENT OF ERROR
 {¶ 9} "THE TRIAL COURT ERRED IN FINDING THAT MASTERS NOT MOBLEY BREACHED THE CONTRACT."
 {¶ 10} We agree that the two contracts are not unlawful. There was evidence of offer, acceptance, and consideration, the consideration being the mutual exchange of promises between Masters and Mobley. Nevertheless, we find no error in the judgment the trial court granted in favor of Mobley in the amount of $21,350, plus interest.
 {¶ 11} Mobley's counterclaim alleged fraud. The magistrate *Page 5 
found that Masters had represented that he owned the liquor license when in fact he did not, and that the misrepresentation induced Mobley to enter into their two contracts, on which she paid Masters $19,000.00 pursuant to their agreements, an additional $1,875.00 needed to transfer the license from the former owner to Masters, and $475.00 for repair of the water valve, for a total of $21,350. The trial court adopted those findings and granted a money judgment for Mobley against Masters in that amount.
 {¶ 12} While the court did not identify its action as such, the court, in effect, granted the equitable relief of rescission in favor of Mobley on the findings the magistrate made.
 {¶ 13} False statements or representations as to one's ownership of property, made for the purpose of inducing some business transaction or dealing in connection therewith, constitute actionable fraud, and may form the basis for rescission of a contract it made in such a way that the other party has a right to rely on them. 50 Ohio Jurisprudence 3d (2002), Fraud and Deceit, Section 33. In a rescission, a contract is treated as a nullity. Frederickson v. Nye (1924), 110 Ohio St.3d 459. Rescission is appropriate when the fraud has resulted in financial damage or loss of a right having *Page 6 
some pecuniary value. 37 American Jurisprudence 2d (2001) 297, Fraud and Deceit, Section 275. A defrauded person may rescind the contract and recover the consideration paid. Eaton v. Davidson (1889),46 Ohio St. 355.
 {¶ 14} Mobley suffered financial damage. She owes $15,000 to the person that lent her the monies Mobley needed to pay the downpayment to Masters. Mobley also suffered damage in the amount of $1,875 when she paid the fee needed for Masters to obtain the license he said he owned. Masters' representations that he owned the license were material to Mobley's decision to enter their agreements, and Mobley was entitled to rely on the representations Masters made. That Masters did not then own the license renders his representations fraudulent, making rescission appropriate. An order of rescission entitles Mobley to the monies the court awarded her.
 {¶ 15} Mobley alleged fraud in her counterclaim, so Masters was on notice of the basis for the relief Mobley sought. All of the evidentiary issues that support rescission were tried in the underlying action. The court found a breach of contract, but did not order rescission as a basis for the relief it granted.
 {¶ 16} "While an appellate court may decide an issue on *Page 7 
grounds different from those determined by the trial court, the evidentiary basis on which the court of appeals decides a legal issue must have been adduced before the trial court and have been made a part of the record thereof." State v. Peagler (1996), 76 Ohio St.3d 496, paragraph one of the syllabus.
 {¶ 17} We find that the evidentiary basis for a rescission was fully adduced before the trial court, and that the relief the court granted was on a rescission of the contract the parties made. We further find that the relief was proper.
 {¶ 18} The first and second assignments of error are overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 19} "THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES TO APPELLEE WITHOUT MAKING A DETERMINATION AS TO WHETHER THE FEES WERE NECESSARY AND REASONABLE."
 {¶ 20} The magistrate awarded Mobley attorney fees in the amount of $5,000 "based on the testimony of Mobley as to the attorney fee she owes." Absent a statutory provision or a specific agreement conferring a right to attorney fees, an award of fees paid or owed is proper only on a finding that the fees are reasonable in amount and necessary for the legal representation required. In order for the court to make that *Page 8 
finding, evidence on both propositions must be offered.
 {¶ 21} The court made no finding concerning the reasonableness or necessity of the fees Mobley owes, and no evidence relevant to prove those matters was offered. The court therefore abused its discretion when it awarded attorney fees.
 {¶ 22} The third assignment of error is sustained.
 Conclusion {¶ 23} Having sustained the third assignment of error, the award of attorney fees is reversed and the case is remanded for further proceedings on Mobley's claim for attorney fees. The judgment from which the appeal is taken is otherwise affirmed.
WOLFF, P.J. And DONOVAN, J., concur.
Copies mailed to: Barry S. Galen, Esq. Thomas J. Buecker, Esq. Hon. Stephen Wolaver
[1] Masters alleged that Mobley promised to pay him $75,000, that she has paid but $18,000, and failed to pay the balance of $57,000. Why Masters then sought a judgment against Mobley for $15,000 is unexplained, but that may be because Masters filed his action in municipal court. It was subsequently transferred to the court of common pleas. *Page 1